OAO91 (Rev. 12/03) Criminal Complaint

# UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

FILED
2009 APR 15 AM 9:30

CLERK US [...]
SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA
V.
RICHARD M. HERSCH

UNSEALED 4/17/09
SEALED

CRIMINAL COMPLAINT

BY _____ DEPUTY

Case Number: **'09 MJ 1201**

(Name and Address of Defendant)

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. On or about __4/19/2008__ in __San Diego__ County, in the __Southern__ District of __California__ defendant(s) did,

(Track Statutory Language of Offense)

for the purpose of executing and attempting to execute a scheme, caused to be deposited matters and things to be sent and delivered by the United States Postal Service and private and commercial interstate carriers, such as Federal Express,

in violation of Title __18__ United States Code, Section(s) __1341__.

I further state that I am a(n) __Special Agent with the FBI__ and that this complaint is based on the following facts:

See Attached Affidavit of Special Agent Jason T. Sahin

Continued on the attached sheet and made a part of this complaint:  ☒ Yes  ☐ No

Signature of Complainant
Special Agent Jason T. Sahin
Printed Name of Complainant

Sworn to before me and signed in my presence,

__4/15/2009__
Date

at __San Diego__ __California__
    City        State

Ruben B. Brooks          U.S. Magistrate Judge
Name of Judge            Title of Judge

Signature of Judge

## A F F I D A V I T

I, Jason T. Sahin, being duly sworn, states:

1. I am a Special Agent of the United States Department of Justice, Federal Bureau of Investigation (FBI).

2. I have been a Special Agent of the FBI for approximately ten months. I am currently assigned to the San Diego Division of the FBI, and have been since my completion of the FBI Academy in Quantico, Virginia. I have been trained in investigating federal violations, to include: mail fraud, wire fraud, bank fraud, investment fraud, securities fraud, internet fraud, telemarketing fraud, and various types of schemes used to defraud victims of their finances.

3. During my employment with the FBI, I have been trained and/or used various methods, and techniques to investigate crimes which include, but are not limited to:

   a. Functioning as a surveillance agent and thereby observing and recording movements of persons involved in criminal activity;

   b. Tracing monies and assets gained by those individuals involved in criminal activity (laundering of monetary instruments and structuring financial transactions); and

   c. Interviewing witnesses, cooperating individuals, and informants relative to the commission of criminal activity.

4. I am familiar with the information contained within this Affidavit through discussions with other agents and law enforcement investigators who have interviewed individuals or personally obtained information. I make this affidavit based upon information from the following sources:

   a. Oral and written reports about this investigation and others that I have received from Special Agents of the Internal Revenue Service (IRS) and the FBI;

   b. The transcript of a recording of a meeting conducted by a federal agent acting in an undercover capacity; and

   c. Documents obtained and generated during the course of the investigation including emails and spreadsheets.

5. Because this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish probable cause for charging a complaint against Hersch for federal violations listed here. Dates and times are approximate.

1

## PROBABLE CAUSE

6. Since early 2008, the FBI and IRS have been conducting an investigation into an investment scheme being operated in the Southern District of California. The fraudulent scheme began in approximately 2006 and continues to the present. Richard Hersch and others recruited investors by promising returns of two to six percent per week on investments into Hersch's company, All States ATM, Inc. (All States ATM). Hersch and others told investors that All States ATM had contracts to provide services to major racetracks in California and around the country. Hersch claimed that All States ATM operated Automated Teller Machines (ATMs) on the "backside" of the racetrack, a non-public area where employees of the racetrack and other personnel work. Hersch also claimed that All States ATM provided a "check-cashing" or loan service to those who work on the "backside" of the track to provide money for the employees to wager on the horse races.

7. I have reviewed documentation filed with the California Secretary of State which includes the Articles of Incorporation of All States ATM and the Statement of Information filed on January 12, 2006. The Statement of Information identifies Richard Hersch as the Chief Executive Officer (CEO), Secretary, and Chief Financial Officer (CFO) as well as a Director. Richard Hersch is identified as the agent for service of process. The business is described as, "Supply ATM machines to businesses." In a subsequent Statement of Information filed November 30, 2007, Hersch continues to be identified as the CEO and CFO, but a second person was added as the Secretary and a Director and the type of business was described as "Financial Services."

8. I have reviewed an email dated June 3, 2008 from Richard Hersch to Greg Knee, who formerly recruited investors into All States ATM. Attached to the email from Hersch is a document listing approximately 100 investors in All States ATM. The total amount invested is approximately $12.1 million and the total amount owed to investors is approximately $4.3 million. On January 16, 2009, Knee entered a guilty plea to one count of Conspiracy to Structure Financial Transactions in violation of Title 18, United States Code, Section 371.

9. On April 17, 2008, an undercover federal agent ("UC") met Hersch for dinner at a restaurant within the Southern District of California. During the meeting, Hersch outlined the program he had been pitching to investors, which was recorded by the UC. I have read a transcript made from the recording of that meeting. During the meeting, Hersch stated that his company "had four and five year contracts with . . . the large racetracks." Hersch said that he deals with thirteen race tracks, including Saratoga, Churchill Downs, Keeneland, Santa Anita, Arlington Park, Del Mar, Hollywood Park, Aqueduct, and Belmont. Hersch claimed to have 160 employees. Hersch said that "we pay our investors two percent a week for fifty weeks," and "then we pay them back their money at the end of the fifty-two week period which means in reality you are ending up with a four percent [weekly] return on your money." Hersch claims to have been in the business for "[e]ight years total, but really three years big time. Three years where I expanded to all of 'em." Hersch explained that All States ATM is his company and that he has no partners. Hersch said, "We're gonna have this nitch 'til the end of our contracts in three or four years." Hersch said that he had 300 investors.

10. Hersch explained to the UC that his company supplies racetrack workers and backstretch employees with money to bet on the horses through machines at the racetrack. Hersch claimed that the employees have a credit limit with the company. Hersch claimed that the employees would repay him within thirty minutes if the wager was successful. Hersch claimed that he would obtain and cash the employee's paycheck if the employee's wager was not successful. Hersch also claimed that he had ATMs on the backstretch. Hersch said that his employees were better than the ATMs during the busy season because Hersch's employees can hold more money.

11. I have reviewed documents showing that Hersch sent by Federal Express on or about April 19, 2008, documents to the address provided by the UC. Within the envelope was a letter signed by Richard Hersch, who identified himself as the President of All States ATM. Two investment agreements were enclosed which outlined a $100,000 investment by the UC into All States ATM. The investment agreements stated that the UC would receive $2,000 per week for fifty weeks and the return of the original investment amount to the investor on the one-year anniversary date of the original investment.

12. I have reviewed a report of an interview of an official from Alliance Bank who met with Richard Hersch regarding All States ATM. On May 28, 2008, Hersch explained that All States ATM owned ATMs at twelve different racetracks throughout the country. He stated that the ATMs are restricted to use by track employees and for the sole purpose of placing wagers at the tracks. He claimed to have contract employees embedded at the racetracks and would receive wires there. Hersch would wire money to the tracks, where his employees would fill the ATMs. The bank official requested a list of the tracks that had contractual obligations. Hersch sent an email to a new account representative at Alliance Bank with an attachment listing the following thirteen horse racing tracks: Turfway Park, Churchill Downs, Keeneland Racecourse, Belmont Park, Aqueduct Racetrack, Saratoga Racecourse, Hollywood Park, Santa Anita Park, Del Mar Turf Club, Monmouth Park, Fair Grounds Race Course, Arlington Park, and Pimlico Race Course.

13. I have reviewed reports generated by agents who have contacted the racetracks identified by Hersch during his meeting with the UC. I have also reviewed documents provided by the racetracks regarding All States ATM. The Chief of Investigations for the New York Racing Association reports that there are no ATMs on the "backside" at Belmont, Aqueduct, or Saratoga, and that the ATMs on the "frontside" are owned by Dime Savings Bank. Churchill Downs Incorporated reports that Churchill Downs, Fair Grounds Race Course, and Arlington Park Racecourse have no record of any contracts between those racetracks and Richard Hersch or All States ATM. Keeneland Asociation reports that Keeneland has owned and operated all ATMs on its property since 2007; before then, ATM Financial LLC operated the ATMs. Keeneland reports that the only backside location of an ATM on the Keeneland grounds is the Track Kitchen, which is open to the public. The Chief of Security at Santa Anita Park reports that Santa Anita owns their own ATMs and has no business dealings with All States ATM. The Director of Security at the Del Mar Thoroughbred Club reports that there are no ATMs located on the "backside" of the track and there are no contracts between Del Mar and All States ATM. The General Manager of the Hollywood Park Racing Association reports that he has no knowledge of a company called All States

3

ATM. He also reports that the ATMs at the racetrack, which only exist on the "front side," are contracted through U.S. Bank.

14. I have reviewed a report of an interview of the Supervising Investigator for the Southern Region of the California Horse Racing Board in which he stated that there are no ATMs on the backside of the tracks that he is aware of, that there are not handheld ATMs or money loaning machines on the backside of the track, that bookies are not permitted to operate on the backside of the track, that backside employees are permitted to place wagers, and that there are "totes" available for that purpose. After listening to an excerpt of a redacted transcript wherein Hersch explained his business to the UC, the Supervising Investigator advised that Hersch's purported business is not occurring to his knowledge and would not be permitted.

WHEREFORE, I request that the Court issue an arrest warrant for Richard M. Hersch.

_____
Jason T. Sahin, Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me on __April 15__, 2009.

_____
RUBEN B. BROOKS
UNITED STATES MAGISTRATE JUDGE

4